UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81087-CIV-MARRA/MATTHEWMAN

DENISE B. CONLON,

    Plaintiff/Counter-Defendant,

vs.

THE NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

    Defendant/Counterclaimant,

vs.

PATRICIA M. CONLON,

    Third-Party Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Plaintiff/Counter-Defendant Denise Conlon's Motion to Dismiss (DE 7) and Third-Party Defendant Patricia Conlon's Motion for Leave to File and Serve Counterclaim (DE 20). The Court has carefully considered the Motions and is otherwise fully advised in the premises.

I. Background

In this case, Denise Conlon ("D. Conlon" or "second wife") seeks a declaration that she is entitled to receive the death benefits of an insurance policy of which her deceased husband, James Conlon ("decedent"), was the insured. D. Conlon also alleges that Northwestern Mutual Life Insurance Company ("Northwestern") breached the insurance contract by failing to pay her these benefits. (Compl., DE 1-2.)

According to the allegations of the Complaint, on or about October 24, 2000, the decedent became an insured under a term to age 75 life insurance policy underwritten by Northwestern. The

policy, number 155522274, had a total death benefit of two million dollars. (Compl. ¶ 4.) As of the policy date, the decedent was married to Patricia Conlon ("P. Conlon" or "former wife") and initially named his former wife as the sole beneficiary of the policy. (Compl. ¶ 5.) On January 16, 2011, the decedent applied for an additional policy of insurance with Northwestern, policy number 19289819. This policy carried a total death benefit of $750,000.00.00 and the sole beneficiary of that policy was P. Conlon, his former wife. (Compl. ¶ 6.) On September 8, 2011, the decedent and P. Conlon entered in a marital separation agreement which states:

ARTICLE IX<br/>LIFE INSURANCE

    A. The Husband shall pay for and maintain in full force and effect the Northwestern [ ] life insurance policy on his life to enable him to designate and he shall designate the Wife as the primary beneficiary thereof to the extent of SEVEN HUNDRED FIFTY THOUSAND ($750.000) dollars payable to the Wife in a lump sum upon the Husband's death for as long as he shall be obligated to pay her alimony pursuant to Article IV hereof.

    B. The Husband may reduce said life insurance by one hundred thousand ($100,000) dollars each year on the anniversary date of the Judgment of Dissolution while he is so obligated.

    C. The Husband shall have the right from time to time to substitute other policies of insurance for the policy presently in effect; provided, however that the Husband notifies the Wife of such substitution and supplies the Wife with the name of the insurance company, the policy number, the type of insurance and the face amount of each policy so substituted and further provided that the total death benefits with respect to said insurance is no less than the benefits with the Husband is obligated to provide in accordance with this Article.

    D. In the event that the life insurance specified in Paragraph A above shall not be maintained in effect at the time of the Husband's death, the difference between the amounts specified in Paragraph A and the amount of Insurance death benefits received by the Wife and/or the minor children shall constitute a charge upon the estate and indebtedness of the estate of the Husband in favor of the Wife to the extent of the provisions of this Article IX.

(Marital Separation Agreement, Ex. B., attached to Compl.; Compl. ¶ 7.)

    On September 9, 2011, the decedent completed a designation of beneficiaries by owner for

death proceeds only, naming his second wife, D. Conlon, as the sole beneficiary to the $2,000,000.00 policy. (Compl. ¶ 9.) On or about January 27, 2012, the decedent applied for another insurance policy - policy number 19739182. (Compl. ¶ 10.) On or about March 9, 2012, the decedent was advised by Northwestern that the $750,000.00 policy was being investigated due to alleged inaccurate information on the application for it. (Compl. ¶ 11.) Two days later, Northwestern informed the decedent that the $750,000.00 policy was being rescinded. (Compl. ¶ 14.) On or about August 28, 2012, Northwestern advised the decedent that as of the "Effective Date of Change - 8/23/2012," the owner of the $2,000,000.00 was D. Conlon, the second wife. (Compl. ¶ 17.) On May 9, 2013, the decedent passed away. (Compl. ¶ 19.)

On or about May 29, 2013, D. Conlon, the second wife, submitted her beneficiary claim for the $2,000,000.00 of coverage. (Compl. ¶ 21.) On or about June 28, 2013, P. Conlon, the former wife, advised Northwestern that she had a claim for $555,000.00 against that same policy, that Northwestern should not release any proceeds until the court has determined the correct payee, and that the proceeds of the policy over and above that amount may be attachable in a fraudulent transfer action. (Compl. ¶ 22.) In response, D. Conlon, the second wife, informed Northwestern that P. Conlon, the former wife, is merely an unsecured creditor of the Estate and demanded payment. (Compl. ¶ 23.)

Northwestern filed its Answer, Counterclaim and Complaint for Interpleader Relief naming P. Conlon, the former wife, as a Third-Party Defendant. (DE 3.) According to the Counterclaim and Complaint for Interpleader Relief, Northwestern admits that the death benefit in the amount of $2,000,000.00 is payable. (Counterclaim ¶ 27.) Northwestern has suspended payment of the death payment based upon the adverse and conflicting claims. (Counterclaim ¶ 29.) Northwestern claims

no beneficial interest in the death benefit. (Counterclaim ¶ 31.) Northwestern is willing and able to pay the death benefit into the registry of the Court and, upon doing so, seeks to be discharged as a disinterested stakeholder. (Counterclaim ¶ 34.)  D. Conlon is a citizen of Florida and P. Conlon is a citizen of Connecticut. (Counterclaim ¶¶ 2-3.) Northwestern brings its claim for interpleader relief pursuant to 28 U.S.C. § 1335.

D. Conlon, the second wife, moves to dismiss Northwestern Counterclaim and Complaint for Interpleader Relief.  (DE 7.)  In so moving, D. Conlon contends that Northwestern has not met the standard for interpleader relief.  In addition, P. Conlon, the former wife, requests leave to file counterclaims against D. Conlon individually, and in her capacity as personal representative of the estate of James Conlon, and against unknown subsequent transferees for violations of the Florida Uniform Fraudulent Transfer Act. (DE 20.)

II. Discussion

A.  Motion to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

The Court begins by noting that Northwestern Mutual relies on the interpleader statute, 28 U.S.C. § 1335.[1] Interpleader is designed to protect stakeholders from harassment in the face of

---

[1] Section 1335 of Title 28 states:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

multiple claims against the same fund, and to relieve the stakeholder from assessing which claim, among many, has merit. State Farm Fire & Casualty v. Tashire, 386 U.S. 523, 534 (1967). "The purpose of an interpleader action is to 'allow the contesting parties to have their rights determined in a court of equity so as to protect the plaintiff from double liability, and to preserve the rights of any claimant to the fund . . . .'" Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L., 699 F. Supp. 2d 1344, 1348-49 (S.D. Fla. 2010) (quoting Johnson v. Johnson, 139 F.2d 930, 933 (5th Cir.1943)).[2] "[T]he federal interpleader statute is merely a special brand of diversity jurisdiction and the determination of who had the right to an interpleader fund is made under the law of the forum state." Wachovia Bank, N.A. v. Tien, 534 F. Supp. 2d 1267, 1284 (S.D. Fla. 2007).

Here, the Court finds that Northwestern has properly alleged the elements of an interpleader action pursuant to 28 U.S.C. § 1335. Both D. Conlon and P. Conlon claim they are entitled to the death proceeds from the life insurance policy issued to the decedent. D. Conlon's Complaint alleges breach of contract for Northwestern's failure to pay the death benefits to her. (Complaint ¶¶ 35-36.) Likewise, Northwestern's interpleader claim alleges that P. Conlon, verbally and in writing, notified Northwestern that she claimed entitlement to the death proceeds and P. Conlon's Answer admitted these allegations. (Counterclaim ¶¶ 19-21; P. Conlon's Answer ¶¶ 19-21.) Next, there is diversity of citizenship between D. Conlon and P. Conlon, (Counterclaim ¶¶ 2-3) and there is no dispute that

---

28 U.S.C.A. § 1335.

[2] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

the contested death benefits are in the amount of $500.00 or more. Although Northwestern has not yet deposited the contested amount into the registry of the Court, it stands ready to do so. Thus, the Court finds that Northwestern has met the requirements of an interpleader action pursuant to 28 U.S.C. § 1335.[3] See American Gen. Life Ins. Co. v. Brothen, 829 F. Supp. 2d 1369, 1370-71 (N.D. Ga. 2011) (discussing requirements for federal statutory interpleader action).

Nonetheless, D. Conlon, the second wife and named beneficiary of the $2,000,000.00 policy, asserts the interpleader claim must be dismissed because P. Conlon, the former wife, has no legal or contractual rights to the benefits of the policy and she is, at best, a creditor of the decedent's estate. Therefore, according to D. Conlon, Northwestern cannot make a bona fide claim that it is unsure as to who is legally entitled to the death benefits of the policy. However, at this early stage of the proceeding, the Court is not in a position to make a determination that P. Conlon, as a matter of law, has no legal or contractual right to the death benefits. Such a result would mean that, in deciding whether an interpleader claim is properly pled, the Court would decide the merits of the underlying dispute, without affording one of the parties who is claiming a right to the proceeds a right to be heard.

For the reasons stated herein, D. Conlon's motion to dismiss is denied.

B. Motion for Leave to File and Serve Counterclaim

Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "only with the opposing party's written consent or the court's leave" and that "the court should freely give leave when justice so requires." In construing Rule 15(a), the Supreme

---

[3] The Court rejects D. Conlon's argument that Florida interpleader law should be applied. Northwestern filed its counterclaim in federal court pursuant to 28 U.S.C. § 1335. Thus, the Court sees no reason to apply Florida interpleader law.

Court has held that:

> In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

On December 12, 2013, P. Conlon, the former wife, served her Answer to the Complaint for Interpleader. (DE 13.)  The deadline for amending pleadings and adding parties is February 3, 2014. (DE 12.)  The instant motion was filed on January 31, 2013. (DE 20.)   This motion is timely and the Court finds P. Conlon has met the standard under Rule 15(a).

D. Conlon, the second wife, argues, however, that the motion should not be granted because P. Conlon's counterclaim does not arise out of the same transaction or occurrence that is the subject matter of D. Conlon's claims against Northwestern and a probate action is pending in state court which involves many of the same claims.

The Supplemental Jurisdiction statute, 28 U.S.C. § 1367 provides in pertinent part:

> ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

In determining whether state law claims "are so related" to a federal claim, a court should examine "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir.1996); see Lucero v. Trosch, 121 F.3d 591, 598 (11th Cir.1997) (finding state and federal claims derive from common

8

nucleus of operative facts because the claims rely on identical actions of defendants); Palmer v. Hospital Auth. of Randolph County, 22 F.3d 1559, 1563-64 (11th Cir.1994) (standard met when federal and state claims involve same witnesses, presentation of same evidence, determination of same facts); L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 427 (11th Cir.1984) (acts by same witnesses were basis for both federal and state claims).

Here, the Court finds that the proposed counterclaim is related to the main action in that it arises out of the same facts. D. Conlon alleges that Northwestern breached its contract by failing to pay her the life insurance proceeds upon the decedent's death. In examining whether there has been a breach of contract, the Court will need to examine the insurance policy and the marital settlement agreement entered into between the decedent and P. Conlon. Similarly, P. Conlon's proposed counterclaim arises from the marital settlement agreement and concerns the transfer of the $2,000,000.00 policy. Consequently, the same witnesses and evidence will be involved in both cases, thus making the exercise of supplemental jurisdiction appropriate.[4]

Based on the foregoing, the Court grants P. Conlon's motion for leave to file and serve counterclaim.

III. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Plaintiff/Counter-Defendant Denise Conlon's Motion to Dismiss (DE 7) is **DENIED**.

2) Third-Party Defendant Patricia Conlon's Motion for Leave to File and Serve

---

[4] The Court rejects D. Conlon's request to stay this action during the pendency of the probate action in state court pursuant to Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942). D. Conlon has not demonstrated that all the parties and claims involved in the instant action have been brought into the probate action.

Counterclaim (DE 20) is **GRANTED**. P. Conlon shall separately file the counterclaim.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of April, 2014.

_____
KENNETH A. MARRA
United States District Judge